MENZIE S. THORN, *et al.*, Appellants, v. J. LISTER, Adm. *et al.*

**Ejectment:** TITLE: SUFFICIENCY OF PROOF. In an action to recover possession of land under an unacknowledged, unrecorded and lost deed, as against a title based on recorded instruments, proof of the deed must be clear and satisfactory. Evidence held insufficient to establish the deed.

*Appeal from Carroll District Court.*— HON. F. M. POWERS, Judge.

FRIDAY, DECEMBER 15, 1905.

ACTION to recover possession of a certain tract of land, to which plaintiffs claim title as the sole heirs of Job Thorn, deceased, alleging the title to have been in said Job Thorn at the time of his death by virtue of a conveyance executed to him by his daughter Sarah F. Anson and her husband, both of whom were deceased at the time this action was brought. The defendant, administrator of the estate of John Anson, contests the validity of the alleged deed from Sarah F. Anson to Job Thorn, under which plaintiffs claim title, and asserts an interest as administrator of the estate of John W. Anson by reason of title in his intestate derived by a conveyance from his wife, Sarah F. Anson, before her death. The case was tried as in equity, and a decree rendered dismissing plaintiff's petition, and quieting the title to the property in question in the estate of John W. Anson. Plaintiffs appeal.— *Affirmed.*

*M. W. Beach* and *Kitt W. Marean,* for appellants.

*W. C. Saul,* for appellees.

McClain, J.—The land in question was in 1880 conveyed to Sarah F. Anson by warranty deed from one Crego, the consideration named being $900; and on the same date a mortgage thereon was given by Sarah F. Anson and her husband to her father, Job Thorn, to secure the payment of the same amount of money. Both the deed and the mortgage were duly recorded on the same day, and the mortgage was satisfied of record by Job Thorn in the following year. The claim of plaintiffs is that, at about the time the deed was made from Crego to Mrs. Anson, she and her husband joined in the execution of a deed to her father, Job Thorn, in which it was recited that in consideration of $900 for the purchase of the land and the cancellation of the mortgage thereafter to be made to secure the repayment of the same, Sarah F. Anson and her husband sold and conveyed to Job Thorn all their right, title, and interest to the land, with this further recital: "It being the intention to convey by this deed all the property described, subject only to occupancy and benefit by grantors during their respective lives, and that this deed shall convey all personal property of the grantors on the same conditions." It is not claimed that this instrument was acknowledged or recorded; but the purported copy introduced in evidence concluded, after the signature of the grantors, with this statement: "Received and accepted by me this 24th day of May, 1880. Job Thorn."

Plaintiffs were unable to introduce the original deed in evidence, explaining its loss by the statement that it was handed by Job Thorn to his son, Wm. M. Thorn, one of the plaintiffs, at about the time of its execution, and that in 1886, while Wm. M. Thorn and his wife were residing in Dakota, a portion of their house was blown away by a windstorm, and this, with other papers in their possession and other contents of the house, were scattered and lost. It is not contended that any direct copy of the instrument was preserved, or that any effort to secure the execution of another instrument by Sarah F. Anson and her husband, both of whom

were still living, was then made. But after the institution of this suit in 1903, and therefore after the death of both the grantors in the deed, plaintiffs caused the deposition of Wm. M. Thorn, one of the plaintiffs, to be taken, in which he testified to the possession by him and the destruction as already narrated of a paper stating that Sarah F. Anson and John W. Anson " had $900 for this land in personal property; that, when they got through with it, it was to come back to the heirs after their death." In a deposition of the wife of Wm. M. Thorn, taken at the same time, she testified to the possession by herself and husband and the loss as above narrated of a deed from Sarah F. Anson and John W. Anson to Job Thorn, conveying the premises in question, in which it was provided that, if Sarah F. Anson died before the grantee, " the property was to revert back to Job Thorn or his heirs "; and she says she cannot give the exact language of the paper. About three months later the depositions of Wm. M. Thorn and his wife were again taken in behalf of plaintiffs, in which each attempted to state specifically the language of the lost instrument. The two instruments thus set out by Wm. M. Thorn and his wife in their second depositions are in identical language, and correspond in every material respect, and with but few slight verbal changes, with an alleged copy attached as an exhibit to an amendment to their petition filed two months prior to the date of the taking of the first deposition of Wm. M. Thorn and his wife. There is no evidence of the execution or delivery of any such instrument by Sarah F. Anson and her husband to Job Thorn in 1880, save that furnished by the depositions of Wm. M. Thorn and his wife above referred to, in which each of them testified to their presence at the time such deed was made.

It seems to us that the testimony for plaintiffs is not of that clear and satisfactory character which is required to justify the setting aside of a title based on recorded instruments. The theory of plaintiffs is that, when the land was

conveyed by Crego to Mrs. Anson, it was under some arrangement by which the purchase money was furnished to Mrs. Anson by her father, and that the alleged deed on which plaintiffs rely converted the transaction into a trust, by which Mrs. Anson and her husband were to have the legal title and right to use and occupancy so long as either of them might live, the title on their death to pass, in pursuance of this deed, to the heirs of Job Thorn, should he have died prior to the termination of such life estate.

It seems to us incredible that such an instrument, intended to preserve to the heirs of Job Thorn property rights which they would be in no position to assert for an indefinite period in the future, should have been executed without acknowledgment, so that the rights evidenced by it could not be made matter of record until after the death of the grantors, when for the first time such rights could be made available; and it is equally incredible that, although Job Thorn had died in 1884, Wm. M. Thorn, losing this instrument, which was delivered to him for the purpose of enabling him in behalf of himself and the other plaintiffs to assert their rights in case of his death, should have refrained for more than fifteen years from taking steps to secure evidence of a title which confessedly could in no other way be established than by the restoration or proof of this lost instrument.

As already indicated, the depositions of Wm. M. Thorn and his wife are far from satisfactory. Although plaintiffs had in their amended petition already set out a copy of the deed which was alleged to have been lost, these witnesses, in their first depositions, do not purport to give the language of such instrument, nor to state its contents in any such way as would support the claim of plaintiffs; and then in their second depositions they claim to be able to set out in the identical language the very instrument on which plaintiffs were relying. These witnesses do not suggest any way by which they were better able in their second depositions than in their first to recite the language of the instrument. It

may be the misfortune of the plaintiffs that the evidence on which their rights were based has been lost and cannot be restored or established, but we think that the evidence relied on is not sufficient to justify us in granting relief.

The decree of the trial court is therefore *affirmed.*